S97A1480. HODNETT v. THE STATE.
(498 SE2d 737)

HINES, Justice.

A jury found Johnny Hodnett guilty of malice murder, three counts of criminal attempt to commit armed robbery, two counts of aggravated assault, and possession of a firearm during the commission of murder in connection with the attempted armed robbery and fatal shooting of Jeremy Lawson and the attempted armed robbery and aggravated assault of David Polk and Brad Purvis. Hodnett appeals after being denied a new trial.[1] For the reasons which follow, we affirm Hodnett's convictions.

The evidence construed in favor of the verdicts showed that on the evening of March 3, 1995, Lawson, Polk, and Purvis were riding in a car together and celebrating Lawson's nineteenth birthday. In the early hours of March 4, they parked their vehicle on the down slope of a hill in front of Purvis' home and talked, drank beer, and read a magazine. Lawson and Polk were seated on the trunk of the car and Purvis was standing four to five feet away and facing the two

---

[1] The crimes occurred on March 4, 1995. On September 26, 1995, a Muscogee County grand jury indicted Hodnett for the malice murder, felony murder, and criminal attempt to commit armed robbery of Lawson, the aggravated assaults and criminal attempts to commit armed robbery of Polk and Purvis, and possession of a firearm during the commission of murder. Hodnett was tried on February 13-20, 1996, and he was found guilty of all charges except felony murder. The jury did not return a verdict on felony murder, and the charge was placed on the dead docket. On February 20, 1996, Hodnett was sentenced to life imprisonment for the malice murder, ten years incarceration on each count of attempted armed robbery to be served concurrently with each other and consecutively with the life sentence, twenty years incarceration on each count of aggravated assault to be served concurrently with the sentences for attempted armed robbery but consecutively with the life sentence, and five years for the firearm possession to be served consecutively to all counts. A motion for new trial was filed on March 12, 1996, amended on March 4, 1997, and denied on April 29, 1997. Hodnett filed a notice of appeal on May 21, 1997, and the appeal was docketed in this Court on June 6, 1997. The case was submitted for decision without oral argument on July 28, 1997.

when they were approached from the other side of the hill by Hodnett and another man. Both Hodnett and his cohort appeared to be armed; the barrel of a gun was sticking out of Hodnett's sleeve. Hodnett drew his weapon, pointed it at the three young men and told them to "give it up" or "get 'em up." As Lawson, Polk and Purvis attempted to run, Hodnett fired four to six shots from behind. Lawson was fatally wounded in the back. Hodnett and his accomplice fled the scene.

The street was well lighted, and both Polk and Purvis viewed Hodnett's face. Polk was able in court to positively identify Hodnett and Purvis picked Hodnett out of a physical lineup. Friends and acquaintances of Hodnett's testified that a day or two after the crimes, Hodnett related details of the attempted robbery and shooting and bragged that he had committed the first murder of the year. One of the friends testified that Hodnett showed him the sewer into which Hodnett threw the gun he used to kill Lawson, and the weapon was later recovered there by police.

1. Hodnett challenges the sufficiency of the evidence, maintaining that the eyewitness accounts were vague, certain of the State's witnesses unbelievable, and the testimony conflicting. However, it was for the jury to assess the credibility of the witnesses, resolve any conflicts in the evidence, and come to a determination of the facts. *Ross v. State*, 268 Ga. 122, 124 (3) (485 SE2d 780) (1997); *Palmore v. State*, 264 Ga. 108 (441 SE2d 405) (1994). The evidence was sufficient for the jury to find Hodnett guilty of malice murder and the related crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Hodnett fails in the claim that the State used its peremptory challenges to strike potential jurors from the venire in a racially discriminatory manner in violation of *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), and consequently, that the trial court erred in refusing to take corrective measures and/or seat another panel. After the opponent of a peremptory strike establishes a prima facie case of purposeful discrimination, the proponent of the strike must articulate a race-neutral explanation for eliminating the juror at issue, an explanation that does not deny equal protection. *Russell v. State*, 267 Ga. 865, 867 (2) (485 SE2d 717) (1997); *Whatley v. State*, 266 Ga. 568, 569 (3) (468 SE2d 751) (1996); *Jackson v. State*, 265 Ga. 897, 898 (2) (463 SE2d 699) (1995). Here, the State articulated concrete, tangible, and non-racial reasons for its challenged exercise of peremptory strikes against African Americans. *Russell*, supra at 867 (2). Contrary to Hodnett's contention, the explanations for striking these members of the venire involved more than mere place of residence or any other factor which could be considered

closely related to race.[2] See *Smith v. State*, 264 Ga. 449 (448 SE2d 179) (1994); compare *Congdon v. State*, 262 Ga. 683, 685 (424 SE2d 630) (1993).

3. While explaining in opening statement how the police initially came to suspect Hodnett in the murder, the prosecutor erroneously related that the police went to the jail to interview a man and that the man was in jail with Hodnett. Hodnett moved for a mistrial on the ground that his character had been improperly placed in issue. The prosecutor informed the court that he meant to say that the individuals who had heard statements about the shooting from Hodnett were in jail but not that Hodnett was in jail with them at that point. The court directed the prosecutor to clarify the situation for the jury, and the prosecutor stated to the jury that the defendant was not in jail at the time and was not incarcerated until he was arrested for the charges on trial. Thus, even though the court did not give a curative instruction, it took curative action. Moreover, in the presentation of its case, the State offered evidence that Hodnett made the statements when he was not in prison.

Under these circumstances, the prosecutor's initial misstatement could not have left the jury with the impression that Hodnett was jailed during the time in question. Thus, it was not an abuse of discretion for the trial court to deny a mistrial based on the claim

---

[2] The State exercised its six peremptory challenges against African Americans and articulated the following explanations for the strikes:

Prospective juror Burke, an African American man, knew the defendant, lived near him and worked close to the crime scene, and the State was concerned that he would be influenced by his relationship with the defendant.

Prospective juror Dowell, an African American woman who was single, unemployed, and had never served on a jury before, lived in the vicinity of the shooting which was an area of considerable gang activity. There was evidence, in regard to the prior criminal transaction offered at trial, that the defendant was affiliated with a gang, and the State had had difficulty getting witnesses to testify in this case due to fear of retaliation by defendant and his friends. The State was concerned that the woman, who lived alone, would be subject to intimidation and afraid to return a verdict of guilt.

Prospective juror Brown, an African American woman, knew relatives of the defendant's alibi witness, saw one of the relatives in court, and probably knew the witness himself. The State was concerned about Brown's ability to be fair and impartial because of her relationship with the defense witness' family.

Prospective juror Cobb, an African American woman, who was a single parent with two young children and a history of unemployment, lived in a complex with reported gang activity, and the State believed that Cobb would be subject to intimidation and afraid to return a verdict against the defendant because of his gang affiliation.

Prospective juror Brown, an African American woman, had two relatives who were murdered and the murderer was released from custody and killed someone else. The State believed from Brown's responses that she was displeased with the office of the District Attorney, the police or the justice system in general, and thus, would be biased against the State.

Prospective juror Williams, an African American man, was a college student with a major in psychology who had worked as a counselor, and it was the State's experience that an individual with such an educational and professional background was pro-defense.

that the prosecutor's comment improperly introduced the issue of Hodnett's character. *Cowards v. State*, 266 Ga. 191, 194 (3) (c) (465 SE2d 677) (1996).

4. Hodnett contends that the lineup viewed by Purvis[3] should have been suppressed as impermissibly suggestive because Hodnett was told by police where to stand.[4] However, even assuming that the police did instruct Hodnett to take a certain position in the lineup, this, in and of itself, would not render the lineup flawed. See *Wiley v. State*, 250 Ga. 343, 346 (1) (a) (296 SE2d 714) (1982). Hodnett has not demonstrated or even asserted that the designated place in the lineup made him stand out from the others in any arbitrary or apparent way. In fact, Purvis testified that the police told him only that he was going to a lineup and that he was not told whom to pick out of the lineup nor was he encouraged in any way to choose a certain individual. The six or seven men in the lineup were dressed similarly, but Purvis was certain that the person he selected, Hodnett, was the perpetrator. Hodnett has not shown evidence that the lineup was impermissibly suggestive.

5. The trial court allowed the admission of evidence of a prior act in which Hodnett shot another individual. Hodnett argues that this was harmful error because the prior act was not sufficiently similar or logically connected so that proof of the independent crime tended to establish the crimes charged. See *Lumpkin v. State*, 205 Ga. App. 68, 69 (2) (421 SE2d 100) (1992), cited by Hodnett.

On the contrary, the similarities between the crimes, which occurred approximately 16 months apart, were many. The victims in both crimes were young men close in age to Hodnett; both victims were strangers to Hodnett; both were with others when assaulted; Hodnett did not act alone; he used a handgun and fired indiscriminately as the unarmed victims attempted to flee; both shootings occurred in the same neighborhood; Hodnett fled the scene immediately after both shootings and did not notify police or turn himself in; and after the first shooting, Hodnett disposed of the gun by giving it to a friend and after the shooting on trial, Hodnett disposed of the gun, and confided its whereabouts to the same individual. Thus, the similar prior act was relevant to show Hodnett's course of conduct and bent of mind to carry a handgun and use it at will, as he did in Lawson's murder. *Campbell v. State,* 263 Ga. 824 (2) (440 SE2d 5)

---

[3] Hodnett refers to a photographic lineup; however, the record shows that this was a physical lineup.

[4] Hodnett filed a pretrial motion to suppress evidence of the lineup on the ground that he was not advised of his right to counsel at the lineup, and consequently, was denied the benefit of counsel. However, at the hearing on the motion, Hodnett argued that the lineup was inherently suggestive on the basis now urged. The trial court declined to rule on the oral ground for suppression.

(1994); *Haywood v. State*, 256 Ga. 694, 696 (2) (353 SE2d 184) (1987).

6. Hodnett is unsuccessful in his claim that his trial counsel was ineffective in failing to reasonably prepare and to give his case the full attention it deserved. In order to prevail with a claim of ineffectiveness of trial counsel, a defendant must demonstrate both that the attorney's performance was deficient and that the deficiency prejudiced the defense. To do this, the defendant must overcome the strong presumption that the attorney's performance fell within a wide range of reasonable professional conduct and that the attorney's decisions were made in the exercise of reasonable professional judgment. *Berry v. State*, 267 Ga. 476, 479 (4) (480 SE2d 32) (1997); *Roland v. State*, 266 Ga. 545, 546 (2) (468 SE2d 378) (1996), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984) and *Smith v. Francis*, 253 Ga. 782, 783 (325 SE2d 362) (1985).

Here, even though trial counsel testified that his preparation to try the case was somewhat lacking because of personal concerns and the press of other professional obligations, the record demonstrates considerable preparation and pretrial work on the case. Counsel, who was appointed well in advance of trial, personally interviewed the many witnesses called and filed numerous pretrial motions on behalf of Hodnett. Additionally, counsel worked closely with an investigator assigned to the case. Hodnett has not demonstrated in any manner that counsel's preparation resulted in professional error or that counsel could have done anything differently which would have produced a more favorable outcome at trial. *Whatley v. State*, supra at 570 (4).

*Judgments affirmed. All the Justices concur, except Fletcher, P. J., who concurs in Divisions 1, 2, 3, 4 and 6 and in the judgment.*

DECIDED FEBRUARY 23, 1998.

Carolyn E. Moller, for appellant.

*J. Gray Conger, District Attorney, Patrick B. Moore, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Deborah L. Gale, Assistant Attorney General,* for appellee.