## S99A0073. EACKLES v. THE STATE.

(512 SE2d 635)

SEARS, Justice.

Adel Eackles appeals his convictions and life sentence for malice murder, possession of a firearm during the commission of a felony, and being a convicted felon in possession of a firearm.[1] On appeal, Eackles contends, among other things, that his trial counsel's performance was deficient for requesting the trial court to give a jury charge on flight. We conclude, however, that even assuming that counsel should not have requested the charge, the charge had no prejudicial impact on Eackles's right to a fair trial. Finding no merit to Eackles's other enumerated claims of error, we affirm.

The evidence introduced at trial was sufficient to enable a rational trier of fact to find that on the evening of January 6, 1993, Joseph Smart was helping his father and mother, Joseph, Sr., and Joyce Smart, load items into the trunk of a car when several men began shooting in their direction. Three bullets struck Joseph Smart, who died at the scene. Three eyewitnesses — Joseph Sr. and Joyce Smart, and the victim's aunt, Willie Mae Smart — identified Eackles as one of the gunmen who shot Joseph Smart. A fourth eyewitness, Terry Bragg, who was helping the family that evening, identified Eackles as one of the gunmen at the murder scene, and observed Eackles flee the scene. A neighbor who lived down the street also

---

[1] The murder took place on January 6, 1993. Eackles was indicted on March 10, 1993 for the following offenses: One count of malice murder; two counts of felony murder, with underlying offenses of aggravated assault and possession of a firearm by a convicted felon; one count of aggravated assault; one count of possession of a firearm by a convicted felon; and two counts of illegal possession of a firearm. The trial was held on February 7-10, 1994, and Eackles was found guilty of malice murder, possession of a firearm during the commission of a murder and possession of a firearm by a convicted felon. Eackles was sentenced to life imprisonment for the murder conviction, and five years for each illegal firearm possession conviction, to run consecutive to the life sentence and to each other. Eackles's new trial motion was filed on March 7, 1994 and amended several times thereafter. The transcript was certified by the court reporter on March 12, 1994. The amended new trial motion was denied on August 7, 1998. Eackles's notice of appeal was timely filed on August 18, 1998, and submitted for decision without oral argument on November 30, 1998.

observed Eackles flee the murder scene.

It was later determined that the victim's father and two of the victim's brothers were involved in the drug trade. In the days preceding the shooting, the victim's two brothers had been fired upon in a fashion similar to the attack in which the victim was killed. On the evening of the shooting, the victim and his father were helping Joyce Smart move temporarily from her Savannah home to a different location for safety reasons. Four weapons were recovered from the murder scene. Three bullets were found in the victim's body. A ballistics examiner concluded that the fatal bullets were likely fired from a .357 magnum firearm, and opined that none of the fatal bullets were fired from any of the four weapons recovered from the scene.

The day after the shooting, Eackles telephoned a woman acquaintance and asked her to tell police that she had spent the night of January 6 at a motel with Eackles. Eackles told the woman that he had registered at the motel under the assumed name of Terry Freeman. The woman later testified that she had not seen Eackles on the night of January 6. It was later verified that someone named Terry Freeman had registered at the motel on the night of the murder.

Savannah police obtained a warrant for Eackles's arrest, and discovered that he had fled the area. Approximately four months later, Eackles was apprehended after a car and foot chase in DeKalb County, and was arrested on suspicion of unrelated offenses. DeKalb County police recovered a .357 magnum that they believed Eackles dropped while fleeing. Firearms experts later concluded that the .357 was not the murder weapon, since the slugs recovered from the victim's body did not match the .357. Eackles was initially booked on the DeKalb County offenses under a false name that he gave to the police. After the police ascertained Eackles's true identity, he was rebooked and charged with the murder of Joseph Smart, Jr. While a detective was leading Eackles to the booking area, and before Eackles was informed of the murder charge, Eackles turned to her and stated, "What's the matter? Haven't you ever seen a murderer before?"

1. The evidence introduced at trial, construed most favorably to the verdict, was sufficient to enable a rational trier of fact to find Eackles guilty beyond a reasonable doubt of the crimes for which he was convicted.[2]

2. We reject Eackles's various claims that he was denied the effective assistance of trial counsel, which are discussed separately below. Of course, an appellant who raises a Sixth Amendment chal-

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

lenge to the adequacy of his trial counsel's representation must show both (1) that counsel's performance was deficient, and (2) that the deficiency prejudiced appellant's defense so as to deny his right to a fair trial.[3]

(a) Eackles's first basis for claiming that his trial counsel's representation was defective is counsel's request that the trial court give the jury a charge on flight. Eackles claims that the flight charge in this case intimated that any evidence of Eackles's flight from the crime scene after the murder could be taken as evidence of his guilt, and therefore should not have been requested by counsel.[4] Eackles also argues that trial counsel erroneously believed that the charge was beneficial to Eackles, because even though flight may be construed as evidence of guilt, it may also be otherwise explained by the defense.

We conclude, however, that even assuming that trial counsel's performance was deficient in requesting a charge on flight, Eackles has failed to carry his burden to show that that deficient performance prejudiced his defense so as to deny him a fair trial. In light of the overwhelming evidence of Eackles's guilt, which included the eyewitness testimony of four witnesses who placed him at the scene of the murder, three of whom actually saw him shoot the victim, we conclude that there is no reasonable probability that, but for trial counsel's request for the charge, the jury's verdict in this matter would have been any different.[5] Therefore, the charge did not prejudice Eackles's right to a fair trial, and he is not entitled to relief on this ground.[6]

(b) Eackles claims that it was improper for trial counsel to state during closing argument that the victim's murder was drug-related, because the jury knew of Eackles's earlier drug-related conviction and the argument thus made an improper connection between Eackles's past crimes and the victim's murder. Counsel testified at the new trial hearing that in making this argument, he was referring to evidence that the victim's entire family had been under siege in the days before the murder, and that the victim's own father and brothers were involved in the drug trade. Accordingly, counsel sought to impress upon the jury that any one of the many people involved in the local drug trade could have been responsible for the victim's murder. Having reviewed counsel's closing argument in its entirety, we

---

[3] *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782 (325 SE2d 362) (1985).

[4] See *Renner v. State*, 260 Ga. 515, 517-518 (397 SE2d 683) (1990).

[5] *Strickland*, supra; *Johnson v. State*, 266 Ga. 380, 383 (467 SE2d 542) (1996).

[6] Since Eackles requested the charge on flight, he cannot complain that the trial court erred in giving the charge. *Williams v. State*, 255 Ga. 21, 23 (334 SE2d 691) (1985).

note that he clearly and effectively made this point to the jury. In urging otherwise, Eackles has referenced only one of counsel's phrases, and has taken that phrase out of context. Because this portion of trial counsel's closing argument was a legitimate trial strategy or tactic, it fell within the bounds of reasonable professional conduct.[7]

(c) Defense counsel employed reasonable trial strategy when asking a detective about the .357 magnum handgun recovered at the time of Eackles's arrest in DeKalb County, because that questioning clearly was geared toward emphasizing to the jury that the handgun recovered in DeKalb County was not the murder weapon. Moreover, we note that counsel's question was asked well before the trial court excluded evidence of the .357 magnum weapon recovered in DeKalb County.

(d) Eackles has not shown that trial counsel failed to adequately investigate the facts of this matter. Counsel testified that he met with and discussed the case with Eackles roughly 15 times before trial, hired an investigator, personally examined relevant documents and records, and interviewed potential witnesses in his search for exculpatory evidence. Contrary to Eackles's contention, counsel testified that he did attempt to obtain motel records to corroborate Eackles's claim that he was not at the scene of the murder. Eackles complains that counsel should have subpoenaed two specific individuals to testify for the defense. However, at the new trial hearing, counsel testified that he never heard of these individuals, and that Eackles never mentioned them to him during trial preparation. Notably, Eackles has not put forth competent evidence as to what these two individuals would have testified to, if they were called, and whether such evidence would have been exculpatory. Hence, he has not shown how the failure to call them was prejudicial.[8]

(e) Eackles's claim that trial counsel improperly prevented him from participating in voir dire is countered by trial counsel's testimony at the new trial hearing that, even though he had no recollection of Eackles's involvement in voir dire, it was counsel's regular habit to encourage clients to participate in voir dire. Accordingly, there was sufficient evidence from which the trial court could conclude that Eackles was allowed to participate in voir dire.[9] Furthermore, Eackles has not attempted to show how the purported prevention of his participation in voir dire has prejudiced him by creating an improperly-composed jury panel. Therefore, we reject his claim of deficient representation in this regard.

3. Eackles complains that the trial court erred in admitting simi-

---

[7] See *Jenkins v. State*, 268 Ga. 468, 473 (491 SE2d 54) (1997).
[8] See *Strickland*, supra.
[9] See *Johnson*, supra; *Smith v. State*, 256 Ga. 483 (351 SE2d 641) (1986).

lar transactions evidence concerning the assaults committed against the victim's brothers in the days before the murder. As stated above, in the days preceding the murder, two of the victim's brothers had been fired upon. Because Eackles was not identified as the shooter in these prior incidents, he claims it was error to admit them as similar transactions.[10] However, even though the trial court made a pre-trial ruling that the similar crimes evidence would be admissible at trial, a review of the transcript shows that the State opted not to present the evidence during its presentation of its case.

We note that, during his testimony, the victim's father stated that because one of the victim's brothers had been shot at, he insisted that the victim's mother leave her home on the night of the murder. That statement, however, did not implicate Eackles and was otherwise relevant, as it explained why the victim was outside the home packing his mother's car at the time he was shot. Furthermore, Eackles did not object at trial to the victim's father's testimony touching upon the earlier shootings; hence, Eackles cannot complain of it on appeal.[11]

4. While Eackles's counsel did assert an alibi defense and did initially request a jury charge on alibi, at the charging conference, counsel agreed with the trial court that no evidence of alibi had been presented to warrant the giving of the charge. By acquiescing to the trial court's decision not to give the charge, Eackles has waived his right to complain further on appeal.[12]

5. The trial court did not err in denying Eackles's motion in limine to exclude evidence of the DeKalb County car chase that immediately preceded his arrest. The evidence was relevant, as (1) it helped to put in context Eackles's inculpatory statement to police officers, "What's the matter? Haven't you ever seen a murderer before?"; and (2) it directly showed Eackles's flight from law enforcement officers.[13] The facts attending an arrest, if otherwise relevant, are generally admissible during a criminal trial.[14]

6. Eackles has waived his claim that the trial court erred in admitting improper character evidence that intimated he was involved in the drug trade. When the evidence was introduced at trial, Eackles's only objection was that the evidence was improper hearsay.[15]

7. Eackles has not satisfied his burden of showing that the trial

---

[10] See *Freeman v. State*, 268 Ga. 185, 191 (486 SE2d 348) (1997) (Benham, C. J., concurring specially).

[11] *Murphy v. State*, 270 Ga. 72, 73 (508 SE2d 399) (1998).

[12] *Earnest v. State*, 262 Ga. 494, 496 (422 SE2d 188) (1992).

[13] *Renner*, supra.

[14] *Ivester v. State*, 252 Ga. 333, 335 (313 SE2d 674) (1984).

[15] *Waldrip v. State*, 266 Ga. 874, 879-880 (471 SE2d 857) (1996).

court abused its discretion in permitting the State to reopen its case in order to introduce into evidence six exhibits, which were certified copies of Eackles's prior convictions,[16] nor does our own review of the record reveal any evidence of discretionary abuse in the trial court's actions.

8. The trial court did not abuse its discretion in granting the jury's request to rehear the audiotaped statements of three State's witnesses,[17] especially in light of the fact that the trial court replayed only what the jury requested to hear.

9. The trial court did not abuse its discretion in confining its recharge to only those portions of the charge relevant to the jury's inquiry.[18] Furthermore, Eackles has waived his claim that in giving the recharge, the trial court expressed an opinion as to Eackles's guilt or innocence, because when asked whether he had any objections to the recharge, Eackles's counsel responded in the negative.[19]

10. Eackles claims that the trial court erred in admitting his custodial statement to police without first conducting a hearing to determine admissibility. However, the transcript shows that when the State announced its intention to call witnesses who would testify as to the circumstances surrounding the taking of Eackles's custodial statement, and asked about the necessity of a hearing to determine admissibility, defense counsel stated that he had no objection to the statement's admission. The statement was then introduced into evidence without a hearing to determine its admissibility. By acquiescing to the statement's admission at trial, Eackles has waived this claim of error on appeal.[20]

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 22, 1999.

*Mark J. Nathan,* for appellant.

*Spencer Lawton, Jr., District Attorney, Christine S. Barker, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jayson Phillips, Assistant Attorney General,* for appellee.

---

[16] See *Page v. State,* 249 Ga. 648, 650 (292 SE2d 850) (1982).
[17] See *Lee v. State,* 259 Ga. 230, 232 (378 SE2d 855) (1989).
[18] *Brown v. State,* 258 Ga. 152, 154 (366 SE2d 668) (1988).
[19] *Bryant v. State,* 268 Ga. 33, 34 (485 SE2d 763) (1997).
[20] See *Earnest,* 262 Ga. at 495.