## A00A0395. LEBBAGE v. THE STATE.
(536 SE2d 282)

RUFFIN, Judge.

Andre Lebbage was charged with armed robbery, possession of a firearm during commission of a felony, and attempting to elude police. Although Lebbage pleaded not guilty by reason of insanity, the jury found him guilty on all counts. On appeal, Lebbage contends that the evidence demanded a verdict of guilty but mentally ill, and that the trial court gave an incomplete recharge to the jury. For reasons that follow, we affirm.

The essential facts of this case are not in dispute. On the morning of September 5, 1995, Lebbage telephoned an Atlanta car dealership and asked sales representative Russell Siefert whether any Porsches were available. After Siefert described one such car, Lebbage said he would come to the dealership later that day to look at the car. Lebbage arrived at the dealership that afternoon, and Siefert showed him the car. Lebbage asked to drive the car, but Siefert said they needed to agree on purchase terms first and that he needed to make a copy of Lebbage's driver's license. Lebbage pulled out a gun, pointed it at Siefert, and demanded the car keys. Siefert threw the keys at him. Lebbage then said, "tell the cops I'll be on 285" and drove away in the Porsche. Siefert ran inside the dealership and called police.

Police located the Porsche on Roswell Road and activated their blue lights and sirens, but Lebbage did not stop. They followed the Porsche onto I-285, where Lebbage drove at speeds in excess of 100 mph and darted in and out of traffic. Lebbage exited I-285 and continued on I-20, where he eventually lost control of the Porsche, which hit another vehicle and came to a halt. Police then arrested Lebbage.

At trial, Lebbage's expert witness, Dr. Barry Scanlon, testified that Lebbage suffers from a bipolar disorder that causes him to experience periods of psychosis — i.e., an inability to correctly perceive reality — followed by periods of normalcy. Lebbage reportedly told Dr. Scanlon that he heard voices in his head beginning at the age of six or seven, and that one of those voices repeatedly recited a poem that prophesied that Lebbage would die in 1995. Lebbage also told Dr. Scanlon that, when he was in high school, his mother predicted that he "would die driving a car fast into a roadblock and the car would explode into flames and kill him." According to Dr. Scanlon, Lebbage suffered from a delusion that he needed to drive a car very fast so that he could fulfill the prophecy that he would die by crashing into a police roadblock, and so that he could overcome his racing thoughts "by physically racing himself fast enough to catch up with his thinking." In Dr. Scanlon's opinion, this delusion "overmastered" Lebbage's will and compelled him to "kill himself in a high speed car

wreck at a police roadblock."

A court-appointed psychiatrist, Dr. Alisa Smith, agreed that Lebbage suffered from bipolar disorder with psychotic features. Dr. Smith also testified that Lebbage had a delusion that he needed to drive very fast. According to Dr. Smith, however, Lebbage admitted he could achieve this goal in his own car, which he said he had driven to Alabama several times before at speeds of 120 to 140 mph. In Dr. Smith's opinion, Lebbage's delusions did not cause his criminal acts:

> I think that he did have a delusion that he needed to go very rapidly and that he would be calmer if he could go real rapidly. . . . But nothing about his delusion specifically told him that the only way that he could accomplish this was to steal an automobile at gunpoint.

Dr. Smith also testified that Lebbage told her that he brought to the dealership a bag containing a change of clothes and a ping pong paddle. Dr. Smith found it "odd" that Lebbage would bring such items if he expected to die.

The trial court instructed the jurors that they could find Lebbage not guilty, not guilty by reason of insanity, guilty, or guilty but mentally ill. The court further instructed the jurors that if they did not find Lebbage not guilty by reason of insanity, then they could consider whether he was guilty but mentally ill. After defining mental illness, the court charged: "If you believe beyond a reasonable doubt that the defendant is guilty and was mentally ill at the time of the commission of the offense or offenses, then you would be authorized to find the defendant guilty but mentally ill as to the time of the crime."[1] The jury found Lebbage guilty on all counts.

1. In his first enumeration, Lebbage contends that the evidence demanded a verdict of guilty but mentally ill.[2] Lebbage points out that, although the State argued that he was not legally insane at the time of the crimes, it was undisputed that he was suffering from a mental illness.

For the jury to return a verdict of guilty but mentally ill, it had to find beyond a reasonable doubt that Lebbage was mentally ill at the time he committed the crimes.[3] Here, there was evidence that Lebbage's mental illness was characterized by periods of normalcy, and that his criminal acts on the day in question were not motivated by

---

[1] Lebbage does not contend that the court's initial jury charge on the "guilty but mentally ill" option was incorrect.

[2] Although Lebbage also states that the evidence "authorized a verdict of not guilty by reason of insanity," he does not contend that the evidence *demanded* such a verdict.

[3] See OCGA § 17-7-131 (c) (2).

the delusions from which he suffered. Moreover,

> [j]urors are not bound by the opinions of either lay witnesses or expert witnesses as to the question of sanity and they may rely on the basic presumption [of sanity] existing under our law. The jury is free to reject expert testimony as to sanity and may find an accused sane even without positive testimony as to sanity.[4]

Accordingly, we cannot say that the jury was *required* to return a verdict of guilty but mentally ill. Thus, Lebbage's first enumeration lacks merit.

2. Lebbage also argues that the trial court gave an incomplete recharge in response to a question submitted by the jury.

During deliberations, the jury submitted the following written question to the trial court: "When considering the verdict of guilty but mentally ill, do we limit our consideration to the time of the act or mentally ill in general?" The trial court told counsel that it would not recharge the jury on the entire law of insanity but would write the jury a note that they should consider whether Lebbage was mentally ill at the time of the commission of the alleged crimes. The court then asked counsel if that response was correct, and defense counsel replied, "Yeah, I suppose that is — yeah."

Later, the jury submitted another question: "In the case of guilty but mentally ill, are we being asked if his mental illness caused the crime or whether he carries a diagnosis of mental illness?" Once again, the court discussed the question with counsel, as follows:

> COURT: I think at this point I might just reread to them the charge of guilty but mentally ill. Any other comments?
> DEFENSE COUNSEL: Well, I mean the defense was delusional compulsion. Would you be charging on delusional compulsion?
> COURT: They haven't asked any questions about delusional compulsion.
> DEFENSE COUNSEL: That's true. I'm sorry, could you just — what was the question again?
> COURT: [repeats question]
> DEFENSE COUNSEL: Okay, thank you.
> PROSECUTOR: I think that would —
> COURT: Everybody concur with just recharging them on mentally ill?

---

[4] (Citations and punctuation omitted.) *Brooks v. State*, 247 Ga. 744, 745 (279 SE2d 649) (1981); see also *Kirkland v. State*, 166 Ga. App. 478, 481 (1) (304 SE2d 561) (1983).

PROSECUTOR: I think that's fine.
COURT: Guilty but mentally ill.
DEFENSE COUNSEL: Yes, judge.

The court then repeated to the jury its previous charge on guilty but mentally ill.

Lebbage contends that the court also should have recharged the jury on not guilty by reason of insanity. But Lebbage waived any objection to the trial court's recharge. His attorney agreed with the trial court that the jury had not asked any questions about the delusional compulsion defense. Then, when asked if he concurred with just recharging the jury on guilty but mentally ill, Lebbage's attorney said, "Yes, judge." Having acquiesced in the recharge as given, Lebbage cannot object to it now.[5]

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED JUNE 23, 2000.

*Elaine T. McGruder*, for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, George W. K. Snyder, Jr., Assistant District Attorneys*, for appellee.

---

[5] See, e.g., *Eackles v. State*, 270 Ga. 558, 563 (9) (512 SE2d 635) (1999); *Orr v. CSX Transp.*, 233 Ga. App. 530, 531 (2) (b) (505 SE2d 45) (1998); *Levin v. State*, 222 Ga. App. 123, 125-126 (3) (473 SE2d 582) (1996).