## S00A1425. BUTLER v. THE STATE.
(541 SE2d 653)

HINES, Justice.

Jesse Butler appeals his convictions for malice murder, three counts of armed robbery, aggravated assault, burglary, and possession of a firearm during the commission of a felony in connection with the fatal shooting of Samuel Maurice Tucker II, the wounding of Shalawn Shellington and the burglary of her residence, and the robbery at gunpoint of Tucker, Octavia Shellington, and Pascal Greene. Butler challenges the sufficiency of the evidence; the admission of certain photographic and other physical evidence; the sufficiency of the State's showing of alleged similar conduct; the proffer of testimony of a State's witness on the ground that such testimony was perjured; certain cross-examination by the State; the State's closing argument; the court's failure to grant a mistrial because of alleged improper prosecutorial comment; the court's recharge to the jury; and the effectiveness of trial counsel. Finding the challenges to be without merit, we affirm.[1]

In the early morning hours of December 5, 1995, Butler and Ricky Swain went to the home of Shalawn Shellington and Greene, a known drug dealer. The men approached Shalawn's sister, Octavia Shellington, and her friend, Tucker, sitting in a parked car outside

---

[1] The crimes were committed on December 5, 1995. On September 18, 1996, a Liberty County grand jury indicted Butler along with Ricky Swain and Gregory Lamar Hagan a/k/a Gregory Lamar Thomas for malice murder; felony murder while in the commission of burglary; three counts of armed robbery; aggravated assault; burglary; and possession of a firearm during the commission of a felony. Butler was separately tried before a jury November 18-20, 1997, and found guilty of all charges. By final disposition signed November 20, 1997, and filed November 21, 1997, Butler was sentenced to life imprisonment for malice murder; life imprisonment for each count of armed robbery; twenty years in prison for aggravated assault; twenty years in prison for burglary; and five years in prison for the firearm possession; all sentences were to be served consecutively. The felony murder stood vacated by operation of law, OCGA § 16-1-7. Trial counsel filed a motion for new trial on December 19, 1997; new appellate counsel filed a motion for new trial on May 4, 1999, and an amended motion for new trial on August 23, 1999. A new trial was denied on January 4, 2000. A notice of appeal to the Court of Appeals was filed on February 2, 2000, and the appeal was docketed in the Court of Appeals on April 27, 2000. It was transferred to this Court on May 2, 2000, and was docketed in this Court on May 12, 2000. The case was submitted for decision on July 3, 2000.

the home. Butler asked for a light and then produced a handgun and demanded money. Tucker, who was a soldier, responded that he had only ten dollars. Octavia was pulled from the car, and Tucker was ordered out of the vehicle. Tucker was hit in the head with the butt of a pistol and forced to the ground, and Butler pulled off Octavia's jewelry. Octavia observed that both of the assailants were wearing dark clothing and masks. The men then forced the couple at gunpoint inside the home.

Once inside, Butler and Swain kicked open or pushed in a bedroom door and found Greene and Shalawn asleep. The men pointed handguns at them and demanded money, which they took from a dresser. Butler, who was doing most of the talking, demanded more money. Tucker and Octavia were forced to lie on the bed with Shalawn. Greene was hit with a pistol and taken into the bathroom. Butler told Tucker to "Lay down, cover your head. Don't look at me or I'm gonna pop you." Tucker responded, "I'm not looking at you." Butler then fired his weapon, fatally shooting Tucker in the head and wounding Shalawn in the arm. Butler again demanded more money from Greene, threatening to "pop" him. Then Butler and Swain ripped the telephones out of the walls and left.

Earlier, on the evening of December 4, 1995, Butler and Swain and Constance Gunter had attended a birthday party at an apartment complex close to the scene of the crimes. At the party, Butler and Swain were overheard talking about going to do a "jack" or a "lick," which the hearer knew was street slang for robbery. Butler was dressed in dark clothing, like "camouflage utilities." As Butler and his group left the party, one of them dropped a firearm and Butler commented, "Maybe you shouldn't drop your 45, 'cause it's kind of like bad luck." Butler was known to carry a handgun, "either a nine or a 45."

Initially, Butler and Swain attempted to give some of the stolen jewelry to Gunter, eventually telling her that they had obtained the jewelry by committing a robbery. The jewelry was then given to Gunter's sister, Alisa Payne, who was also Butler's girlfriend. After conducting an investigation of the crime scene, the police executed search warrants for the homes of Swain, Gunter, and Payne. The searches uncovered items of jewelry taken from Pascal Greene and Shalawn Shellington.

At trial, a jailhouse informant testified that Butler told him about the fatal incident. Butler related that Swain was in the bathroom "detaining somebody," that "things got out of hand," and that the soldier would still be alive if he "didn't try to be a hero."

Butler testified and denied involvement in the crimes.

1. Butler contends that the State failed to prove his guilt beyond a reasonable doubt, asserting principally that the only direct evi-

dence of his participation in the crimes was the testimony of the jailhouse informant, Coma, and that such testimony was motivated by Coma's desires for revenge and to better his own situation and, therefore, was not credible. But, it was for the jury to assess Coma's credibility as well as that of the other witnesses, to resolve any conflicts in the evidence, and to arrive at a determination of the facts. *Bowden v. State*, 270 Ga. 19, 21 (4) (504 SE2d 699) (1998); *Hodnett v. State*, 269 Ga. 115, 116 (1) (498 SE2d 737) (1998). The evidence was sufficient for the jury to find Butler guilty beyond a reasonable doubt of malice murder and the related crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Butler contends that the State was allowed to impermissibly place his character in issue by the admission into evidence of State's Exhibit 60, a photograph of Butler and Payne with a toy gun. But, Butler objected below on the bases of relevance and, arguably, on lack of foundation; he never asserted the improper injection of his character. Therefore, he may not raise it for the first time on appeal. *Richardson v. State*, 256 Ga. 746, 747 (4) (353 SE2d 342) (1987). See also *Williams v. State*, 262 Ga. 422, 424 (6) (420 SE2d 301) (1992).

3. Butler's contention that the trial court erred in admitting into evidence the jewelry seized from Alisa Payne is unavailing. The jewelry was admitted without objection. *Earnest v. State*, 262 Ga. 494, 495 (1) (422 SE2d 188) (1992). What is more, contrary to Butler's assertion, there was evidence tying the items to the crimes.

4. Butler also fails in his assertion that the State used the perjured testimony of Coma to obtain his convictions. There is no showing that the testimony was perjured. And to the extent that there may have been inconsistencies in Coma's testimony, such inconsistencies, as well as Coma's credibility, were for the jury to decide. *Bowden v. State*, supra at 21 (4); *Hodnett v. State*, supra at 116 (1).

5. Butler contends that the State was allowed to impermissibly cross-examine him regarding his first offender disposition in violation of due process and *Matthews v. State*, 268 Ga. 798, 801 (493 SE2d 136) (1997). He argues that the State should have put him on notice of its intent to bring up his first offender disposition, and that he should have been given a hearing to determine its admissibility. However, the contention and arguments are unavailing.

Butler failed to object at any time during the subject cross-examination. It was not until after the close of evidence that Butler moved for a mistrial, relying on *Matthews v. State*. Thus, Butler did not make the required contemporaneous objection in order to preserve his complaint for review on appeal. *Garey v. State*, 273 Ga. 133 (539 SE2d 123) (2000); *State v. Larocque*, 268 Ga. 352, 353 (489 SE2d 806) (1997). What is more, *Matthews* involved the court permitting the prosecutor to impeach the defense witness with his first offender

record by raising it during cross-examination of the witness and then by having the record of the plea admitted into evidence. In this case, the State did not seek to impeach Butler with documentation of a prior disposition or conviction; in fact, the evidence of Butler's criminal history was introduced by Butler himself.

On direct, Butler testified that he had been on parole, so the State briefly cross-examined him about his statement. Butler elaborated that he "got a youth offender act in the State of South Carolina, which is a one to six for second degree burglary and grand larceny," and that the charges stemmed from the burglary of a hardware store. There was no attempt by the State to introduce into evidence the charges or their resolution. Nor was there any showing by Butler that the disposition of the South Carolina charges was akin to the sentencing option under Georgia's First Offender Act, OCGA § 42-8-60 et seq.

6. Butler fails in the contention that the trial court erred in not requiring the State to meet the requisite burden for offering similar conduct. Butler does not specify what similar act evidence he believes was improperly admitted. However, assuming that Butler is referring to his testimony on cross-examination of his prior out-of-state charges, his complaint has no merit. See Division 5, supra. Again, no timely objection was made at trial, therefore he cannot complain on appeal. *Garey v. State*, supra; *State v. Larocque*, supra at 353. See also *Eackles v. State*, 270 Ga. 558, 562 (3) (512 SE2d 635) (1999). Furthermore, this was not a situation in which the State introduced a first offender plea as evidence that the defendant committed a similar independent offense. See Division 5, supra. Compare *Davis v. State*, 269 Ga. 276, 277 (2) (496 SE2d 699) (1998).

7. Butler maintains that the trial court erred in failing to grant a mistrial after what he characterizes as improper prosecutorial comment which was prejudicial and placed his character in issue. But Butler never moved for a mistrial, nor did he object on the bases now urged.[2] See Division 2, supra. In any event, the State was merely explaining its reason for asking leading questions of its witness, and the trial court has the discretion to allow leading questions when the witness is reluctant to testify, as appeared to be the case with the witness at issue. *Hayes v. State*, 268 Ga. 809, 812 (6) (493 SE2d 169) (1997).

8. Butler complains that the trial court should have granted a mistrial based on the prosecutor's comment during closing argument

---

[2] In the redirect questioning of a State's witness, defense counsel objected to the prosecutor leading or "couching" the witness. The prosecutor responded that he should be allowed to lead the witness because the witness had given an inconsistent statement and that it was evident that the witness was "reluctant to testify against his friend."

about the convictions of Ricky Swain.[3] But, Butler did not object to the comment at the time it was made. He waited until the end of closing argument to move for a mistrial. And it is plain that a defendant must timely object to the alleged impropriety in closing argument so that the trial court can take remedial action, if any is warranted. *Mullins v. State*, 270 Ga. 450 (2) (511 SE2d 165) (1999); see also *State v. Larocque*, supra at 353. Even assuming the timeliness of Butler's objection and motion for mistrial, the prosecutor's statement fails to provide a basis for reversal of Butler's convictions. See *Wyatt v. State*, 267 Ga. 860, 864 (485 SE2d 470) (1997). Butler's own counsel first mentioned Swain's convictions in opening statement in an obvious attempt to discredit Swain's anticipated testimony.

9. In response to a question from the jury, the trial court charged on parties to a crime. Butler contends that this was error because he was not indicted as such, and there was no evidence that he was a party. However, Butler was indicted for these crimes along with two other individuals. It was not necessary for the State to allege violations of OCGA §§ 16-2-20 and 16-2-21 in the indictment in order for Butler to be considered as a party to the crimes. *State v. Johnson*, 269 Ga. 370, 373 (3) (499 SE2d 56) (1998). What is more, the charge was supported by the evidence at trial.

10. Lastly, Butler alleges various instances of his trial counsel's ineffectiveness. However in order to prevail on a claim of ineffectiveness of trial counsel, a defendant must show that his attorney's performance was deficient and that the deficiency prejudiced him such that a reasonable probability exists that, but for the attorney's errors, there would have been a different outcome at trial. *Mobley v. State*, 271 Ga. 577 (523 SE2d 9) (1999), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). This Butler cannot do.

(a) Butler contends that his counsel was ineffective in eliciting testimony from him that he was previously in prison or on parole. But Butler has failed to show such claimed ineffectiveness. Moreover, examination of trial counsel's opening statement indicates that the defense correctly anticipated Coma's testimony about Butler's inculpatory statements while the two were incarcerated together. Therefore, a decision to be forthright about Butler's prior brushes with the law could reasonably be deemed to be trial strategy. And

> [i]nformed strategic decisions do not amount to inadequacy under *Strickland*. [Cit.] "The fact that appellant and his

---

[3] Butler also appears to take issue with comments made during argument in the motion for mistrial. However, the comments were made by Butler's counsel and were outside the presence of the jury.

present counsel now disagree with the difficult decisions regarding trial tactics and strategy made by trial counsel does not require a finding that appellant received representation amounting to ineffective assistance of counsel." [Cit.]

*DeYoung v. State,* 268 Ga. 780, 785-786 (5) (493 SE2d 157) (1997).

(b) Butler asserts that trial counsel failed to adequately cross-examine Coma.[4] However, the transcript reveals that counsel conducted a substantial cross-examination of the witness. What is more, a matter such as the cross-examination of a witness is most often grounded in matters of trial tactics and strategy and, in those instances, provides no basis for finding counsel's performance deficient. Thus, the trial court properly concluded that this claim of ineffective assistance of counsel has no merit. *Turner v. State,* 245 Ga. App. 294, 296 (c) (536 SE2d 814) (2000).

(c) Butler next asserts that counsel was ineffective for failing to call to testify available alibi witnesses, namely a man whom Butler claims could have testified to his whereabouts at the time of the crimes. But Butler has failed to make any showing of what the man would have testified to had he been called as a witness or that he was with Butler or knew that Butler was not at the crime scene during the relevant time frame. *Goodwin v. Cruz-Padillo,* 265 Ga. 614, 615 (458 SE2d 623) (1995).

(d) Butler likewise fails in his contention that counsel did not adequately investigate the case because counsel did not subpoena records from the jail administrator to refute Coma's statement that he asked to speak to the jail administrator about Butler's confession. As Butler concedes, trial counsel's failure to employ certain evidence cannot be deemed prejudicial to the defendant in the absence of a showing that the evidence would have been relevant and favorable to the defendant. *Goodwin v. Cruz-Padillo,* supra at 615. No such showing has been made.

(e) Butler claims that counsel was inadequate for not challenging the relevancy of seized jewelry and other items. However, the items were identified as taken from the victims and were clearly relevant on the question of Butler's involvement in the crimes. See Division 3, supra.

(f) Finally, Butler claims that trial counsel was ineffective for not filing pretrial motions to suppress evidence also used in co-defendant Swain's trial.[5] But the evidence was that the two committed the

---

[4] Butler complains that counsel "failed to inquire of Coma those things he remembered in fact regarding the appellant's so-called statement and those matters he simply assumed."

[5] Although not separately enumerated, Butler also complains about his counsel in open-

crimes together, making relevant parts of the State's case against Swain. What is more, Butler fails to provide any legal basis for suppression.

*Judgments affirmed. All the Justices concur.*

CARLEY, Justice, concurring.

I concur in the judgment of the majority opinion. With regard to Division 8, dealing with the failure of the trial court to grant a mistrial based upon the State's closing argument, I think it is very clear that appellant's motion for mistrial made at the end of the prosecutor's closing argument was timely. In *Williams v. Memorial Medical Center*, 218 Ga. App. 107, 109 (460 SE2d 558) (1995), the appellee argued that the trial court correctly refused to consider appellant's objection at closing argument because it was not made until after counsel had finished his closing argument. The Court of Appeals rejected that contention and held that "[t]o the contrary, plaintiff's objection made during trial was timely. [Cits.]" However, as the majority concludes, the trial court in this case correctly denied the motion for mistrial because the challenged closing argument was not improper.

I am authorized to state that Presiding Justice Fletcher and Justice Sears join in this opinion.

DECIDED FEBRUARY 5, 2001.

*Jones, Osteen, Jones & Arnold, Linnie L. Darden III*, for appellant.

*J. Thomas Durden, District Attorney, James S. Archer, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Adam M. Hames, Assistant Attorney General*, for appellee.

---

ing statement mentioning Swain's convictions. As previously noted, this was a matter of trial tactics. See Divisions 8, 10 (a), supra.