S12A0126. MATHIS v. THE STATE.
(728 SE2d 661)

HUNSTEIN, Presiding Justice.

Appellant Paul Mathis was convicted of malice murder and related offenses in connection with the 2006 shooting death of Jurell Williams. Appellant appeals the denial of his motion for new trial, asserting evidentiary errors and ineffectiveness of trial counsel. Finding no error, we affirm.[1]

---

[1] Appellant and his co-defendant, Ray Bryant, were indicted in February 2007 by a Fulton County grand jury on charges of malice murder, felony murder, aggravated assault with a deadly weapon, aggravated assault, attempted armed robbery, and firearm possession during the commission of a felony. Following a jury trial held in January 2009, Appellant was convicted on all six counts and was sentenced to life imprisonment for murder, plus 20 years concurrent for aggravated assault and five years concurrent for firearm possession; the remaining charges merged or were vacated for sentencing purposes. Appellant filed a timely motion for new trial on February 12, 2009, which was amended in June 2011. Following a hearing, the motion for

1. Viewed in the light most favorable to the verdict, the evidence adduced at trial established as follows. On the evening of October 18, 2006, Jurell Williams was shot to death in the parking lot of the Park at Greenbriar apartment complex in Southwest Atlanta. The sole known eyewitness to the shooting, Larry Foster, testified that he and Williams, a friend of his who sold marijuana in the apartment parking lot, were in the parking lot on the evening of the shooting. Foster saw Appellant, whom Foster knew from the neighborhood, approach Williams and say, "where is the money at?" to which Williams replied, "I don't got none." Appellant struck Williams in the face, knocking him to the ground, and then shot Williams. Foster further testified that co-defendant Bryant approached during the altercation and, after Williams was shot, helped Appellant search Williams' clothing. After the shooting, both men drove away in a red car, which Foster testified he believed was Bryant's wife's car. At the crime scene, Foster identified the shooters to police as "Payday" and "Ray-Ray" or "Billy Ray," and later that evening as "Paul" and "Ray." Approximately one week later, Foster gave a formal statement to police, providing physical descriptions of both men and identifying both in photo lineups. Trial testimony established that Appellant's nickname was "Payday" and that Bryant's was "Ray-Ray."

Witness Sonja White, a resident of the apartment complex, heard the gunshots on the night of the crime. White testified that, immediately after the shots were fired, she looked out her window and saw a black male get into a red car and quickly leave the parking lot. Witness Patricia Dukes, who was acquainted with Williams, testified that she heard the gunshots from her apartment and ran outside to assist, and that, as she was tending to Williams, he mumbled the words "Ray-Ray" and "Payday." Dukes also testified that Bryant and his wife at the time, who happened to be Dukes' granddaughter, owned a red car. Witness Typurs Mitchell, another apartment resident, testified that he heard the shots, looked out the window, and realized the victim was Williams, a close friend of his with whom he had just spent several hours. Mitchell also testified that Williams had told him, a few days prior to the night of the shooting, that "two dudes named Ray-Ray and Payday" had been threatening to kill him for selling marijuana in the Park at Greenbriar parking lot. Witness Tameka James, a former girlfriend of Williams, testified that she had been with Williams earlier on the evening of the shooting and that

new trial was denied on July 22, 2011. Appellant filed his notice of appeal on August 10, 2011. The case was docketed to the January 2012 term of this Court and thereafter submitted for decision on the briefs.

during that time he had received disturbing text messages, which he said were from people who had robbed him two weeks earlier.

The evidence was sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that appellant was guilty of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant alleges error in the trial court's refusal to grant a mistrial after it became clear that certain testimony given by Foster was based not on his personal knowledge but rather on hearsay. Specifically, Foster testified that Appellant and Bryant were in a dispute with Williams because he was selling marijuana in what they considered to be their territory. On cross-examination, however, Foster admitted that he had not personally witnessed any such dispute and knew of it only because of "something that someone said." At that point, though declining to declare a mistrial, the trial court gave curative instructions directing the jury to disregard any testimony based on hearsay.

Appellant contends that the trial court's curative instructions were insufficient. Even if we were to accept this premise, however, reversal would not be warranted unless Appellant suffered harm from the admission of the hearsay. *Heard v. State*, 274 Ga. 196 (6) (552 SE2d 818) (2001). Here, to the extent Foster's testimony exposed prior difficulties between the co-defendants and the victim, the testimony was cumulative of Mitchell's testimony (which we find to have been admissible, see Division 3, infra) that Appellant and Bryant had threatened Williams days prior to the shooting. See *Smith v. Stacey*, 281 Ga. 601, 601-602 (1) (642 SE2d 28) (2007) ("[t]he admission of hearsay testimony is harmless when it is cumulative of legally admissible evidence showing the same fact"). In addition, in combination with Mitchell's testimony, the other evidence implicating Appellant in the shooting, including Foster's identification of Appellant as the shooter and Dukes' testimony regarding Williams' dying declaration, makes it highly probable that the hearsay testimony did not contribute to the verdict. See *Morris v. State*, 280 Ga. 179 (3) (a) (626 SE2d 123) (2006). Accordingly, this enumeration is without merit.

3. Appellant next contends that the trial court erred in allowing Mitchell to testify about the victim's statement regarding threats he had received from "Ray-Ray" and "Payday" a few days before the shooting. The trial court held that the statement was admissible under the necessity exception to the rule against hearsay. See *Brown v. State*, 278 Ga. 810 (2) (607 SE2d 579) (2005). To satisfy the necessity exception, the proponent must establish "a necessity for the evidence, a circumstantial guaranty of the statement's trustworthiness, and

that 'the hearsay statements are more probative and revealing than other available evidence.' " (Citations omitted.) Id. at 811 (2).

As an initial matter, Appellant has failed to preserve this argument for review because, while Bryant's defense counsel vigorously opposed the State's request to elicit the hearsay statements, Appellant's counsel failed to object, join in Bryant's objection, or argue in any way regarding this issue. Further, even had the issue been properly preserved, the requirements of the necessity exception were met, and thus the trial court did not abuse its discretion in admitting the testimony. It is undisputed that, because Williams was deceased and thus unavailable to testify, the first prong of the necessity exception was met. See *Brown*, supra, 278 Ga. at 811 (2). Regarding the second prong, we have held that a statement is trustworthy when made to someone with whom the declarant enjoys a close personal relationship. See id.; *Devega v. State*, 286 Ga. 448 (3) (689 SE2d 293) (2010). Here, Mitchell testified that he and Williams were friends who saw one another almost every day and described himself as a confidante of and mentor to Williams, who often sought Mitchell's advice. See id. at 449 (3) (victim's girlfriend, whom victim trusted and had close relationship with, permitted to testify regarding deceased victim's statements); *Bell v. State*, 278 Ga. 69 (3) (597 SE2d 350) (2004) (victim's best friend and relatives permitted to testify regarding victim's statements). As to the final prong, Appellant has identified no alternative source of the information revealed in the statement, namely, that Appellant and Bryant had been threatening Williams in the days before the shooting. The trial court thus properly admitted the hearsay statement.

4. Appellant next contends that his trial counsel was ineffective for failing to challenge Bryant's counsel's decision to call Mitchell as a witness. To establish ineffective assistance of trial counsel, Appellant must show both that his counsel performed in a professionally deficient manner and that there is a reasonable probability that, but for such deficiency, the result of his trial would have been different. *Sanders v. State*, 290 Ga. 445 (4) (721 SE2d 834) (2012), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

Mitchell was called by Bryant in an apparent attempt to rebut witness Dukes' testimony that she had ministered to Williams in the aftermath of the shooting and heard him implicate "Ray-Ray" and "Payday" in his dying breaths. Indeed, on direct examination, Mitchell testified that he alone was at Williams' side after the shooting, that Dukes was not present, and that Williams was unable to speak. Unfortunately for the co-defendants, Mitchell also opened the door to the admission of Williams' hearsay statement, see Division 3, supra,

by stating that he was Williams' friend and confidante, and went on to testify about that statement, to the apparent surprise of both defense counsel, who had failed to elicit this critical piece of evidence despite having interviewed him pretrial.

At the motion for new trial hearing, Appellant's counsel testified that he had not felt strongly either way about calling Mitchell as a witness, believing his testimony would be neither very helpful nor harmful. Specifically, he testified that nothing in Mitchell's pretrial interviews suggested either that he would claim to be a confidante of Williams or, more importantly, that Williams ever had identified Appellant and Bryant as the individuals who were threatening him. In other words, trial counsel made a strategic decision, based on his pretrial investigation, not to challenge Bryant's counsel's decision to call Mitchell as a witness. The fact that Mitchell gave unforeseen damaging testimony does not justify an after the fact adjudication of deficient performance, and Appellant's ineffectiveness claim in this regard must fail.

5. Appellant also claims that trial counsel was ineffective for failing to challenge the admission of Dukes' testimony regarding the victim's dying declaration. The record reveals that Dukes' testimony in this regard was a surprise to the defense, as she had previously lied to police and prosecutors regarding her knowledge about the crime and did not reveal Williams' statement to prosecutors until the eve of trial. Based on trial counsel's pretrial investigation, including his review of Dukes' pretrial statements to police, he reasonably expected Dukes to testify that she had no personal knowledge regarding the shooting, and thus he cannot be faulted for failing to anticipate the radical change in Dukes' testimony.

Further, though Appellant decries trial counsel's failure to object once Dukes had given her surprising testimony, he identifies no valid basis for objection. Because the record reflects that Dukes' last-minute revelation to prosecutors was not recorded in any written form, Appellant can show no violation of the State's reciprocal discovery obligations. *Hunt v. State*, 278 Ga. 479 (2) (604 SE2d 144) (2004) (statutory obligation to produce witness statements does not apply to oral statements). Further, the statement satisfied the requirements for admission as a dying declaration. See OCGA § 24-3-6 ("[d]eclarations by any person in the article of death, who is conscious of his condition, as to the cause of his death and the person who killed him, shall be admissible in a prosecution for the homicide"). Rather than make a meritless objection, counsel sought on cross-examination to impeach Dukes and highlight the suspicious nature of her last-minute revelation. Counsel did not perform deficiently in this regard, and this claim, too, must fail.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 25, 2012.

*Long Dai Vo*, for appellant.

*Paul L. Howard, Jr., District Attorney, Paige Reese Whitaker, Sheila E. Gallow, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Katherine R. Thrower, Assistant Attorney General*, for appellee.