## S13A0480. FAIRCLOTH v. THE STATE.
### (744 SE2d 52)

HUNSTEIN, Chief Justice.

Appellant Ronnie Faircloth was convicted of murder and other offenses in connection with the September 2007 shooting death of his wife. Faircloth appeals the denial of his motion for new trial, asserting the trial court erred in admitting evidence of prior difficulties between the couple and testimony regarding past statements made by the victim. Finding no reversible error, we affirm.[1]

---

[1] The crimes were committed on September 24, 2007. On November 28, 2007, Faircloth was indicted by a Dougherty County grand jury on one count each of malice murder, felony murder, aggravated assault, possession of a firearm during the commission of a crime, driving

Viewed in the light most favorable to the jury's verdict, the evidence adduced at trial established as follows. On September 24, 2007, Norma Faircloth was killed by a gunshot to the head in the apartment she had moved into after recently separating from her husband. The couple had been married for 27 years, throughout which Faircloth had inflicted physical and verbal abuse on his wife on a regular basis. From the time their three sons were young, the victim had made known to them her intention to leave their father as soon as they were grown. In September 2007, the victim finally carried out this plan, moving into her own apartment just three days before she was killed.

On the evening of the shooting, the couple's youngest son, Brandon, was at the family's home when his father returned from work and began drinking beer. At one point in the evening, Brandon overheard a telephone conversation between Faircloth and the victim, during which Faircloth was upset and said words to the effect that she "didn't love him no more." After the phone conversation ended, Brandon heard Faircloth open and then shut the door of his gun cabinet, after which Faircloth left the house, telling Brandon he was going to buy more beer.

A short time later, Faircloth called Brandon on the phone and told him he was "going to try to get Mom back." Phone records show this call was placed at 10:19 p.m. Around this time, Faircloth stopped at Homerun Foods, a local convenience store, where he purchased beer and told the attendants he was going to "sweet talk" his wife into coming home. At 10:29 p.m., Faircloth placed a 911 call to report his wife's death.

Emergency responders described a bloody scene, the victim lying lifeless on the floor with a bullet hole in her cheek. These witnesses testified that Faircloth's demeanor at the scene was emotionless and "nonchalant." A paramedic recounted that Faircloth, entering the apartment behind emergency responders, muttered, "I need a beer," and tried to step over his wife's body to retrieve one from a bag on the kitchen counter. An investigator at the scene subsequently found

under the influence, and tampering with evidence. At the conclusion of a jury trial held November 10-13, 2008, Faircloth was convicted on all six counts. He was sentenced to life imprisonment for malice murder plus a consecutive five-year term for firearm possession; an additional consecutive five-year term for tampering with evidence; and a twelve-month term, concurrent with the life term, for DUI. On December 8, 2008, Faircloth filed a motion for new trial, which was amended first on March 2, 2011 and a second time, through new appellate counsel, on November 3, 2011. On April 9, 2012, the new trial motion was denied, except as to the tampering with evidence count, on which the trial court ordered Faircloth be resentenced. That same day, Faircloth filed a notice of appeal. The appeal was docketed to the January 2013 term of this Court and was thereafter submitted for decision on the briefs.

Faircloth sitting in his truck outside the apartment, drinking a beer, appearing relaxed; during their conversation, the investigator testified, Faircloth "continuously wanted to go back in [the apartment] and get another beer." A second officer described Faircloth as "sluggish and intoxicated," smelling of alcohol, and slurring his speech. Faircloth told investigators in statements at the scene and afterwards that he had come to visit his wife at her apartment, left to buy beer, and returned to find her dead. Investigators found no signs of forced entry into the apartment.

Evidence established that Faircloth had purchased a .380 caliber Jennings M38 semi-automatic pistol in 2003. A pistol bearing the same serial number as the one Faircloth had purchased was found more than a year after the shooting, corroded and caked with dirt, on the banks of a lake about one-tenth of a mile from the Homerun Foods where Faircloth had stopped to buy beer on the night of the murder. Ballistics testing established that the bullet that killed the victim, as well as the cartridge case recovered from the crime scene, had been fired from this pistol.

The pants and boots Faircloth had been wearing at the scene were stained with his wife's blood. Forensics experts concluded that these blood stains were sustained contemporaneous with the shooting, from a distance of one to three feet from the victim. The medical examiner opined that the victim had been shot from arm's length range and established the cause of death as a gunshot to the head.

Brandon testified that his mother had once told him that his father had threatened to kill her if she ever tried to leave him. In addition, police seized from Faircloth's home a 2007 calendar bearing a notation in Faircloth's handwriting on the date on which the victim had moved out, which read: "The day hell freezes over Norma leaves."

Faircloth testified in his own defense, denying all involvement in his wife's murder. According to Faircloth, he had left his home that evening intending to go hunting but had changed course when his wife called to invite him over; he had arrived at his wife's apartment, where the couple began to "get romantic"; he had then left to get beer while his wife showered; and when he returned, the door was ajar and his wife was lifeless in a pool of blood. He claimed that her blood had splashed onto his pants when he knelt down to hold her hand. Faircloth admitted to having owned the murder weapon but claimed to have sold it a year and a half before his wife's death. He claimed that the notation on his calendar was a reference to an "inside joke." He also admitted to consuming somewhere between six and nine beers on the night of the murder.

1. Though Faircloth has not challenged the sufficiency of the evidence, we have nonetheless reviewed the record and find the

evidence sufficient to enable a rational trier of fact to conclude beyond a reasonable doubt that Faircloth was guilty of all the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). While Faircloth denies culpability and purports to explain away the evidence against him, " '[i]t was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (Citations omitted.) *Vega v. State*, 285 Ga. 32, 33 (1) (673 SE2d 223) (2009).

2. Faircloth contends the trial court erred in admitting evidence of Faircloth's past physical and verbal abuse of the victim. At the time of trial, evidence of prior difficulties between the defendant and the victim was admissible as proof of their relationship and to show the defendant's motive and intent. See *Frazier v. State*, 278 Ga. 297 (2) (602 SE2d 588) (2004).[2] In admitting the evidence here, the trial court properly instructed the jury that it could consider the evidence only for these limited purposes. See id. Despite Faircloth's claim that the physical abuse occurred too remotely in time to have probative value, the lapse in time between prior acts and the crime at issue bears on its weight and credibility rather than its admissibility. See *Rowe v. State*, 276 Ga. 800 (5) (582 SE2d 119) (2003). We therefore find no abuse of discretion in the trial court's admission of this evidence.

3. We likewise reject Faircloth's contention that the trial court erred in allowing the victim's sons and a work colleague to testify as to statements the victim made regarding the state of her relationship with Faircloth, her intention to leave the marriage once her children were independent, and Faircloth's threat to kill her if she ever left him. The trial court admitted these statements under the necessity exception to the rule against hearsay, which requires the proponent to establish "a necessity for the evidence, a circumstantial guaranty of the statement's trustworthiness, and that the hearsay statements are more probative and revealing than other available evidence." (Citation and punctuation omitted.) *Mathis v. State*, 291 Ga. 268, 270-271 (3) (728 SE2d 661) (2012).[3]

Given that the victim is deceased and thus unavailable to testify, it is undisputed that the first prong of the necessity exception has been satisfied. See *Mathis* at 271. Regarding the second prong, "we have held that a statement is trustworthy when made to someone with whom the declarant enjoys a close personal relationship." Id.

---

[2] The rules for admissibility of such evidence under the new Georgia Evidence Code, effective for trials commenced on or after January 1, 2013, are codified at OCGA § 24-4-404 (b).

[3] Under the new Evidence Code, the necessity exception is encompassed within OCGA § 24-8-807. See Paul S. Milich, *Georgia Rules of Evidence*, § 19:32 (2012).

Here, the evidence was undisputed that the victim enjoyed close relationships with and confided in all of her sons. As to the victim's colleague, that witness testified that the victim was his supervisor, that they worked together closely, and that they routinely discussed with one another their personal lives and problems. We therefore conclude that the statements have sufficient indicia to satisfy the trustworthiness requirement. As to the final prong, the victim's statements to her sons regarding her longstanding intention to leave her husband were the only available evidence of this intention. Likewise, the victim's most damning statement, regarding Faircloth's threat to kill her if she ever left him, was the only available evidence of this threat. Accordingly, we find no abuse of discretion in the trial court's admission of these hearsay statements.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 3, 2013.

*Kevin C. Armstrong*, for appellant.

*Gregory W. Edwards, District Attorney, Matthew Breedon, Christopher S. Cohilas, Assistant District Attorneys, Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Kenneth W. Mishoe, Assistant Attorney General*, for appellee.