297 Ga. 445
FINAL COPY

S15A0624. MARSHALL v. THE STATE.

HINES, Presiding Justice.

Levi Jerome Marshall, Jr., appeals from his convictions and sentences for malice murder and making false statements to law enforcement officers, in connection with the death of Alan O'Neal. For the reasons that follow, we affirm.[1]

Construed to support the verdicts, the evidence showed that O'Neal and Carlos Coleman were seated on Coleman's front porch on Dixon Street when two men emerged from along the side of the house bearing firearms; the two men fired handguns, and O'Neal returned gunfire, but was struck by projectiles and died of multiple gunshot wounds.

---

[1] The crimes occurred on June 21, 2011. On September 14, 2011, a Chatham County grand jury indicted Marshall for malice murder, felony murder while in the commission of the crime of attempted robbery, and making false statements to law enforcement officers. He was tried before a jury April 8-11, 2013, and found guilty of malice murder and making a false statement to a law enforcement officer; the court granted a directed verdict as to the charge of felony murder while in the commission of the crime of attempted robbery. On April 15, 2013, Marshall was sentenced to life in prison for malice murder and a consecutive term of five years in prison for making false statements to law enforcement officers. Marshall filed a motion for new trial on May 6, 2013, which he amended on September 19, 2013, and again on March 14, 2014. On September 15, 2014, the motion, as amended, was denied. Marshall filed a notice of appeal on October 7, 2014, and the appeal was docketed in this Court for the January 2015 term, and submitted for decision on the briefs.

Shortly after this incident, police officers responded to a 911 call several miles away, where Marshall reported that he had been shot in the leg while walking down the street. Marshall went to a cousin's house, and asked for help, and the cousin called 911; his cousin told a responding law enforcement officer that he did not hear a gunshot, although another cousin in the house said he heard one gunshot. Marshall was taken to a hospital and treated for a gunshot wound in the leg. After Marshall left the hospital, detectives assigned to O'Neal's murder interviewed him. Initially, he said that he had not been present at Dixon Street but was instead shot near his cousin's home, several miles away. However, he eventually admitted that he was in the neighborhood of the shooting, and had been shot from a passing car while he was in the lane behind Coleman's house; he said that he was alone at the time.

Part of the State's theory of the case was that Marshall acted in concert with another man in coming around the side of Coleman's house. The State presented the testimony of John Bright, who testified that he walked past Coleman's house, spoke to Coleman and O'Neal, and walked past Marshall, who was dribbling a basketball at the corner of Coleman's street. Bright and Marshall exchanged greetings, Marshall then turned around and went back

2

toward a basketball court, and Bright continued across a park; Bright initially described this encounter as "they come up behind me [sic]." He later testified that two other young men were separated from Marshall by approximately 50 yards in the direction in which Marshall turned after encountering Bright, although he could not say that the three men were together; his statement to an investigating detective was that the distance between Marshall and the others was 20 yards. Bright testified that four to six minutes after his encounter with Marshall, he heard gunshots, saw police cars arriving, and walked back to the area of Coleman's house; there, shortly after the shooting, Bright spoke with Coleman while standing outside the police evidence tape, but he testified that the exchange was nothing more than his inquiry as to what happened, and Coleman's response was that he did not know.

Coleman testified that he and O'Neal were seated outside his home when "people" came around the side of the house; in response to several questions about details such as their clothing, if they had firearms, or said anything, he replied "I can't remember." The State received the trial court's permission to treat Coleman as a hostile witness, and Coleman later testified that one assailant had a white T-shirt over his face, but he did not see a second assailant; he later

3

testified that he did see a second person.  Although he testified that he gave a statement to an investigating detective, he said he could not remember telling him that one assailant had covered his face with his arm, or that the assailants said: "You know what time it is."   Coleman also testified that before the shooting, he had played basketball in the nearby park, but could not remember whether he played against Marshall; he also denied that O'Neal had played a dice game and won a significant amount of money.  He testified that after the shooting, he retrieved a pistol from the ground near O'Neal, went to a neighbor's house across the street, and then went to another street nearby; he denied returning to his house after law enforcement officers and the ambulance arrived.  Although forensic evidence indicated that O'Neal had exchanged gunfire with his assailants, Coleman testified that he heard multiple shots, but had fallen to the ground exiting his chair and did not see O'Neal fire a weapon.

Marshall's mother testified that shortly after the time of the shooting, Marshall came to her house near Coleman's house while another young man from the neighborhood stayed outside; she did not identify this other young man, but said it was not Leonard Anthony or Irvin Bryant.  At Marshall's request, she drove him to a location on the other side of town, but she did not

4

notice any injury to Marshall at the time; she also testified that Marshall wanted money to retrieve his car from an impoundment lot.

The detective who interviewed Coleman after the shooting testified that Coleman said that he could not identify the assailants, but that the height, weight, and complexion of the man who had a T-shirt over his face was consistent with that of Marshall, and that this man was wearing dark shorts, a white tank top, and black and teal "Bo Jackson" athletic shoes, which were the clothes that Coleman had seen Marshall wearing earlier at the basketball court. Coleman also said that the height, complexion, and haircut of the other man was consistent with that of Leonard Anthony. The detective also testified that Bright had told him that prior to Bright's encounter with Marshall, Marshall had been walking toward Coleman's house, but turned around after the encounter, as did the other two men, who were about 20 yards from Marshall. Bright also told the detective that after the shooting, he spoke to Coleman and learned what had happened, and that this was the extent of the conversation between Bright and Coleman. The detective also testified that Coleman had given a different recounting of his conversation with Bright, telling the detective that Bright said that, shortly before the shooting, he saw Marshall and Anthony enter the lane

behind Coleman's house.

Rakesh Patel, an inmate with Marshall during his pre-trial confinement, testified that Marshall said that O'Neal was a "pre-prick," meaning an easy or gullible subject for robbery; Marshall also told Patel that he was not concerned that Leonard or Irvin might implicate him in the shooting of O'Neal, as if either man did so, he would be implicating himself. Patel also testified that Marshall "loved" handguns, was known to carry them at all times, and told Patel of an incident in which a pistol fell from his pocket and discharged, after which Marshall gave a false version of events to investigating law enforcement officers, contending he was elsewhere at the time of the incident.

1. The evidence was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Marshall was guilty of the crimes of which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Marshall claims that his trial counsel failed to provide effective representation in several respects. In order to prevail on a claim of ineffective assistance of counsel, Marshall must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense.

*Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984). To meet the first prong of the required test, he must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong of the test, he must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783. "'We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

(a) Marshall first contends that counsel was ineffective in failing to make a hearsay objection to the testimony of the investigating detective regarding what Coleman told him Bright had said to Coleman shortly after the shooting.[2]

_____

[2] During Coleman's testimony, no questions were posed concerning any exchange with Bright that took place after the shooting.

7

The trial court found that the first prong of the *Strickland* test was met, but that the second prong was not, given the state of the evidence. And, this was not error.

When counsel's alleged deficient performance is the failure to object to hearsay evidence, "such an error may not warrant a new trial . . . when the hearsay testimony is merely cumulative and when it is highly probable that its admission did not contribute to the guilty verdict." *Zachary v. State*, 276 Ga. App. 688, 691 (2) (624 SE2d 265) (2005). See also *Hall v. State*, 292 Ga. 701, 703 (2) (b) (743 SE2d 6) (2013). The hearsay was largely cumulative with Bright's testimony, although the hearsay added the detail that Marshall entered the lane behind Coleman's house in the company of Anthony. At trial there was no dispute that Marshall entered the lane; he admitted to investigators that he was there, although he contended that he was shot in the lane, rather than after emerging from beside the house. But, the explanation of his wound that he eventually gave — that he was shot from a passing car — was belied by the forensic evidence, as well as by Coleman's testimony. Accordingly, there is no reasonable probability that, had counsel excluded the detective's testimony regarding Bright's conversation with Coleman, the result of the trial could have

been different. *Smith*, supra. See *Mathis v. State*, 291 Ga. 268, 270 (2) (728 SE2d 661) (2012); *Lampley v. State*, 284 Ga. 37, 39 (2) (663 SE2d 184) (2008).

(b) Marshall also contends trial counsel was ineffective in failing to object to Patel's testimony regarding Marshall's propensity to carry firearms, and that Marshall had given a false version of events to investigating law enforcement officers regarding a prior incident involving a handgun. In denying the motion for new trial, the trial court correctly noted that, contrary to Marshall's argument, evidence that he owned and frequently carried a pistol does not impute to him generally bad character. See *Sweet v. State*, 278 Ga. 320, 325 (7) (602 SE2d 603) (2004).

As to the evidence that Marshall had previously given a false version of events during a law enforcement investigation, the trial court did not err in finding that Marshall could not show prejudice under the second prong of the *Strickland* test, even if counsel could have objected to the testimony under OCGA § 24-4-404.[3] The evidence that Marshall gave a false statement to a law

---

[3] OCGA § 24-4-404 reads:
      (a) Evidence of a person's character or a trait of character shall not be admissible for the purpose of proving action in conformity therewith on a particular occasion, except for:
            (1) Evidence of a pertinent trait of character offered by an accused or by the prosecution to rebut the same; or if evidence of a trait of character of

enforcement officer as charged in the indictment was overwhelming,[4] and there

is no reasonable probability that the jury's being informed that Marshall had

acted in a similar manner in a prior incident contributed to the jury's verdict.

See *Ellis v. State*, 287 Ga. 170, 173 (2) (695 SE2d 35) (2010); *Moore v. State*,

242 Ga. App. 249, 251 (1) (a) (529 SE2d 381) (2000).

c) Marshall contends that trial counsel was inattentive during trial, even

---

the alleged victim of the crime is offered by an accused and admitted under paragraph (2) of this subsection, evidence of the same trait of character of the accused offered by the prosecution;

(2) Subject to the limitations imposed by Code Section 24-4-412, evidence of a pertinent trait of character of the alleged victim of the crime offered by an accused or by the prosecution to rebut the same; or evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a homicide case to rebut evidence that the alleged victim was the first aggressor; or

(3) Evidence of the character of a witness, as provided in Code Sections 24-6-607, 24-6-608, and 24-6-609.

(b) Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The prosecution in a criminal proceeding shall provide reasonable notice to the defense in advance of trial, unless pretrial notice is excused by the court upon good cause shown, of the general nature of any such evidence it intends to introduce at trial. Notice shall not be required when the evidence of prior crimes, wrongs, or acts is offered to prove the circumstances immediately surrounding the charged crime, motive, or prior difficulties between the accused and the alleged victim.

[4] Faced with this overwhelming evidence, trial counsel conceded the commission of the crime of giving a false statement to a law enforcement officer before the jury. Although Marshall asserts that this choice rendered irrelevant any evidence about a prior false statement, the State was still obligated to present evidence regarding the false statement as Marshall's "plea[s] of not guilty contested every allegation of the criminal charges against him that was necessary to establish guilt." *Graves v. State*, 269 Ga. 772, 773 (1) (504 SE2d 679) (1998) (Disapproved on other grounds, *Jones v. State*, 272 Ga. 900, 903 (2) (537 SE2d 80) (2000).

at one point putting his head on the table and falling asleep. In its order denying the motion for new trial, the court noted counsel denied he had slept, although did agree that he had probably put his head down on the table during the time that the recording of Marshall's interview with investigators was played for the jury.[5] The court found that counsel had reviewed the recording on several occasions, knew its content, and knew that there was nothing in the recording to which counsel could raise further objection. These findings were amply supported by the record, and the court was correct to reject any question of presumptive prejudice under *United States v. Cronic*, 466 U. S. 648 (104 SCt 2039, 80 LE2d 657) (1984), and thus to evaluate Marshall's claim of ineffective assistance of counsel under the *Strickland* standard. See *Charleston v. State*, 292 Ga. 678, 682-683 (4) (a) (743 SE2d 1) (2013). And, under that standard, the court did not err in finding that Marshall failed to show ineffective assistance arising from this incident. As the court noted, even though this

---

[5] During the hearing on the motion for new trial, the courtroom clerk testified that during the playing of the recording, counsel put his head on the table, and another court attendant touched him; she could not say whether he was asleep. Marshall's mother testified that counsel appeared to be asleep at this point, and during the course of the trial, often appeared to her to be inattentive. At trial, during the playing of the recording, the court took a short recess, noting that the courtroom was warm and dark; at the conclusion of the recess, before the recording was restarted, the court informed the jury that it had attempted to have maintenance personnel address the temperature of the room and noted that the court was then permitting counsel and the witness to appear with their jackets off.

display of inattentiveness was "outside professional norms," Marshall failed to show that any evidence was introduced thereby which could have been excluded, and thus failed to show prejudice. See *Lynch v. State*, 291 Ga. 555, 557-558 (2) (c) (731 SE2d 672) (2012).

(d) Finally, Marshall contends that the collective effect of trial counsel's alleged errors, considered together, warrants a new trial. But, even if trial counsel erred as Marshall has alleged, Marshall has not demonstrated a reasonable probability that the cumulative effect of the alleged errors affected the outcome of the proceeding. *Toomer v. State*, 292 Ga. 49 (4) (734 SE2d 333) (2012).

Judgments affirmed. All the Justices concur.

Decided June 29, 2015.

Murder. Chatham Superior Court. Before Judge Walmsley.

Amy L. Ihrig, for appellant.

Meg E. Heap, District Attorney, Matthew Breedon, Assistant District Attorney; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth M. Haase, Assistant Attorney General, for appellee.