308 Ga. 57
FINAL COPY

S19A1588.  TAYLOR v. THE STATE.

BLACKWELL, Justice.

Antonio Taylor was tried by a Fulton County jury and convicted of murder and other crimes in connection with the stabbing death of Araminta Elly.[1] Taylor appeals, contending that the trial court erred when it admitted certain hearsay testimony and when it denied his motion for a mistrial based on the prosecution's alleged use of his pre-arrest silence. Finding no reversible error, we affirm.

---

[1] Elly was killed on March 23, 2008. On June 20, 2008, a Fulton County grand jury indicted Taylor for murder with malice aforethought, murder in the commission of a felony (aggravated assault with a knife), aggravated assault with a knife, and possession of a knife during the commission of a felony. Taylor was tried in October 2010 and found guilty of all charges. On October 7, 2010, the trial court sentenced him to imprisonment for life for malice murder and a consecutive term of imprisonment for five years for the knife possession. The other counts merged or were vacated by operation of law. Taylor filed his initial motion for new trial on October 7, 2010, and a final amended version on April 16, 2018. After a hearing, the trial court denied his motion for new trial on May 28, 2019. Taylor timely appealed, and this case was docketed to the August 2019 term of this Court and submitted for a decision on the briefs.

1. Viewed in the light most favorable to the verdict, the evidence presented at trial shows the following. On March 23, 2008, Elly was found stabbed to death behind a vacant house at 1648 Richmond Avenue in Fulton County. The house was in a neighborhood that a witness described as "rough" and "drug-infested." A knife lay beside Elly's body, and drug paraphernalia were found nearby. An autopsy revealed that Elly had suffered three significant stab wounds, including a lethal wound to the heart.

Elly had been dating Taylor for about two years, and both of them were drug users. The day before Elly died, her sister, Sharon Corbin, saw her walking in the Richmond Avenue neighborhood with a bloody nose. Elly told Corbin that her nose injury was caused by Taylor, who had "jumped on her" earlier that day and also threatened to stab her to death.

On the morning of March 23, a resident of the neighborhood, William Stridiron, was walking with Elly down Richmond Avenue, and along the way, Elly stopped by a "dope house." When Elly came out of the dope house, she was angry and told Stridiron that Taylor

2

"was trying to get her money." Stridiron continued walking with Elly down the street and noticed that Taylor was following them. When they reached 1648 Richmond Avenue, Elly went behind the house to take "a hit," with Taylor following her.

Shortly thereafter, someone informed Stridiron that Taylor and Elly were arguing. Stridiron looked toward the vacant house and saw Taylor "jumping the fence." Stridiron then walked over to the house, where other people had gathered, and saw Elly lying on the ground groaning and "comatose," with a knife beside her left shoulder. Stridiron testified that this knife belonged to Taylor — Stridiron had seen him playing with it on multiple occasions.

Later that day, Taylor visited a house where his ex-girlfriend, Alicia Hargett, was living with her father and brothers. Hargett testified that Taylor had blood on his pants and was acting "suspicious." Taylor told Hargett that he had been a victim of a robbery and shooting in which his friend was killed, but he told Hargett's father that he was shot due to some tax-related dispute. Taylor did not allow Hargett to look at his wound and declined

multiple offers to call the police or an ambulance. While Taylor was at the house, Hargett saw smoke and fire in the back yard, and Hargett's father saw half-burnt clothes and blood-covered shoes in the back yard.

Taylor's father testified that, on the day of the murder, Taylor spoke with him and asked him to have Taylor's sister check on Elly because "he believed somebody had f*cked up [Elly]." Taylor also told his father that Elly "and some guy was behind the house doing their thing and something erupted." Taylor's father did not know how Taylor learned this information. The day after the murder, the police obtained a warrant for Taylor's arrest. The following day, Taylor agreed to turn himself in at the behest of his parents, and they picked him up from Meriwether County and drove him to the police station.

Taylor does not dispute that the evidence is sufficient to sustain his convictions. But consistent with our usual practice in murder cases, we independently have reviewed the record to assess the legal sufficiency of the evidence. We conclude that the evidence

presented at trial, when viewed in the light most favorable to the verdict, was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that Taylor was guilty of the crimes of which he was convicted. See Jackson v. Virginia, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

2. Taylor first argues that the trial court erred when it admitted Corbin's testimony that, the day before the murder, Elly told her that Taylor gave her a bloody nose and threatened to stab her to death. Taylor contends that this evidence was hearsay and was not admissible under the necessity exception to the hearsay rule.

To have hearsay evidence admitted under the necessity exception of the old Evidence Code,[2] the proponent of the evidence

---

[2] Taylor was tried before January 1, 2013, so the old Evidence Code applies in this case. See Graves v. State, 298 Ga. 551, 554 n.2 (783 SE2d 891) (2016). The hearsay statute of the old Evidence Code, former OCGA § 24-3-1, provided:

> (a) Hearsay evidence is that which does not derive its value solely from the credit of the witness but rests mainly on the veracity and competency of other persons.
> (b) Hearsay evidence is admitted only in specified cases from necessity.

5

had to establish "a necessity for the evidence, a circumstantial guaranty of the statement's trustworthiness, and that the hearsay statements [were] more probative and revealing than other available evidence." Mathis v. State, 291 Ga. 268, 270-271 (3) (728 SE2d 661) (2012) (citation and punctuation omitted).[3] "The trial court's admission of hearsay evidence under the necessity exception is evaluated under an abuse of discretion standard." Watkins v. State, 276 Ga. 578, 580 (2) (581 SE2d 23) (2003).

Taylor does not dispute that the first prong of the necessity exception here was satisfied — Elly was deceased and unavailable to testify at the time of trial. See Brown v. State, 278 Ga. 810, 811 (2) (607 SE2d 579) (2005) ("The first requirement [of the necessity exception] is satisfied because the declarant is deceased."). Rather Taylor takes issue with the other two prongs — trustworthiness and the existence of other available evidence. Specifically, he contends that police officers and other witnesses may have observed Elly's

---

[3] Under the current Evidence Code, this type of hearsay is now governed by OCGA § 24-8-807 — known as the "residual exception."

altercation with Taylor and that the State failed to show that these witnesses were unavailable to provide a more probative account of the incident or to corroborate Elly's statement to Corbin.[4] This argument is unavailing.

Concerning trustworthiness, "we have held that a statement is trustworthy when made to someone with whom the declarant enjoys a close personal relationship." Davis v. State, 294 Ga. 486, 487 (2) (754 SE2d 67) (2014) (citation and punctuation omitted)). See also Faircloth v. State, 293 Ga. 134, 137 (3) (744 SE2d 52) (2013). Here, Corbin testified that she and Elly were "very close," that they helped each other, and that Elly confided in her and trusted her. And there was no indication that, despite this close relationship, Elly's statement to Corbin was fabricated or lacking veracity. Thus, the State made a sufficient showing of trustworthiness. See Davis, 294

---

[4] When Corbin was questioned about Elly's statement outside the presence of the jury, Corbin testified that, according to Elly, Taylor and Elly were at Taylor's sister's house when Taylor bloodied Elly's nose and threatened to stab her, and that the police were called as a result of this altercation. There was no testimony as to who was present in the house at the time of the altercation (besides Taylor and Elly) or whether any third party observed the incident.

Ga. at 487 (2) (the trustworthiness prong is satisfied where victim "confided in her niece" — the declarant — "with whom she had a close relationship"); Todd v. State, 274 Ga. 98, 100 (3) (549 SE2d 116) (2001) (victim's statement to her sister satisfied the trustworthiness prong).

The third prong of the necessity exception required the State to show that Elly's statement to Corbin was "more probative and revealing than other available evidence," Mathis, 291 Ga. at 271 (3) (citation and punctuation omitted), and we conclude that the State has carried its burden. The prosecutor told the trial court that there was "no other source" for this information, and that there were no statements by Elly to law enforcement that would have avoided "Confrontation Clause issues."[5] Neither Taylor nor the trial court challenged these assertions by the prosecutor. See State v.

_____

[5] See Johnson v. State, 289 Ga. 22, 26 (4) (709 SE2d 217) (2011) ("The Confrontation Clause generally prohibits the admission of an out-of-court testimonial statement made by a declarant who is not available for cross-examination by the accused." (citing Crawford v. Washington, 541 U. S. 36 (124 SCt 1354, 158 LE2d 177) (2004)).

Rosenbaum, 305 Ga. 442, 451 (2) (a) (826 SE2d 18) (2019) ("[A]ttorneys are officers of the court and a statement to the court in their place is prima facie true and needs no further verification unless the same is required by the court or the opposite party." (Citation and punctuation omitted)). See also Faircloth, 293 Ga. at 138 (3) (necessity prong satisfied where the "victim's most damning statement, regarding [defendant's] threat to kill her if she ever left him, was the only available evidence of this threat"). In light of the foregoing, the trial court did not abuse its discretion when it admitted Elly's statement under the necessity exception.

3. Taylor also contends that the trial court erred when it refused to order a mistrial based on the State's alleged use of Taylor's "pre-arrest silence" in its case-in-chief and closing argument. At trial, Detective Mark Cooper testified that he received a call from Taylor on the day of the murder. During that call, Cooper said, "I asked Mr. Taylor if he would meet with me and come in and provide me with a statement. He indicated he was not going to do that at this point, and shortly after that he terminated the phone

conversation." During closing argument, the prosecutor remarked on the phone call as follows:

> Well, [Taylor's] sister goes over there, and she sees [Elly] is dead. And she sees the cops are looking for her brother. She tells [Taylor] the cops are looking for you. And he has the audacity to call the police and say I know you're looking for me but I'm not coming in. I'm not turning myself in. I know the mother of my children, my girlfriend, for years is dead, abandoned in an alleyway. I'm not coming in to tell you what happened.

Under the umbrella of the old Evidence Code, we held that a prosecutor may not comment on a defendant's pre-arrest silence because, "in criminal cases, a comment upon a defendant's silence or failure to come forward is far more prejudicial than probative." Mallory v. State, 261 Ga. 625, 630 (5) (409 SE2d 839) (1991). See also Moore v. State, 278 Ga. 397, 399 (2) (a) (603 SE2d 228) (2004) (the State was not permitted under Mallory to elicit testimony about defendant's failure to come forward when he knew the police were looking for him).[6]

---

[6] We recently held that the current Evidence Code abrogated Mallory's rule categorically excluding evidence or comments concerning the defendant's pre-arrest silence. State v. Orr, 305 Ga. 729, 739 (3) (827 SE2d 892) (2019). We

Here, the State presented evidence that Taylor visited different places in the two days following the murder and that he was picked up by his parents in Meriwether County after they told him to turn himself in. His phone call to the police tended to show that he knew the police were looking for him on the day of the murder and that his subsequent movements, including his trip to Meriwether County, were intentionally designed to evade the police. In this respect, Detective Cooper's testimony about receiving a call from Taylor could be characterized as evidence of flight or circumstances surrounding an arrest, which we have held to be admissible. See Moore, 278 Ga. at 399 (2) (a) ("A defendant's flight is a proper subject for questioning and for argument."); Eackles v. State, 270 Ga. 558, 562 (5) (512 SE2d 635) (1999) ("The facts attending an arrest, if otherwise relevant, are generally admissible during a criminal trial."). But to the extent Detective Cooper's testimony suggested

left open the question of "whether *Mallory*'s exclusionary rule should continue to be applied to cases governed by the old Evidence Code," id. at 736 (2) n.6, and we do not decide this question today. See Spell v. State, 305 Ga. 822, 827 (2) n.5 (828 SE2d 345) (2019).

that Taylor was guilty because he declined to *speak* with the police about the crime, this testimony would not be admissible under the Mallory rule. See Mallory, 261 Ga. at 629 (5) (it was error to admit evidence that, prior to his arrest, defendant did not "come forward to explain his innocence").

While Detective Cooper's testimony presents a close question, the prosecutor's closing remarks were clearly improper under Mallory — the prosecutor insinuated that, if Taylor was innocent, he should have told the police "what happened" prior to his arrest. See Mallory, 261 Ga. at 629 (5). See also State v. Sims, 296 Ga. 465, 469 (2) (a) (769 SE2d 62) (2015) (prosecutor's comments were impermissible because they "expressly emphasize[d] that [defendant] failed to call police after he shot [the victim] and prior to being arrested"); Pearson v. State, 277 Ga. 813, 817 (5) (c) (596 SE2d 582) (2004) (prosecutor "should not have included in her argument a reference to [defendant's] pre-trial failure to raise the defense of justification").

Nevertheless, neither the prosecutor's closing remarks nor Detective Cooper's testimony (to the extent it was improperly admitted) rises to the level of reversible error. See Rivera v. State, 295 Ga. 380, 382 (2) (761 SE2d 30) (2014) ("The test for determining nonconstitutional harmless error is whether it is highly probable that the error did not contribute to the verdict." (Citation and punctuation omitted)). The evidence of Taylor's guilt was strong, Detective Cooper's testimony was only marginally incriminating when viewed in context, and it is highly probable that neither this testimony nor the prosecutor's comments affected the outcome of the proceedings.[7] See Rowland v. State, 306 Ga. 59, 66 (3) (829 SE2d 81) (2019) ("Given the strong evidence of [defendant's] guilt and the minimal use by the prosecutor of the challenged evidence of

---

[7] We also note that, to address Taylor's concerns about comments on pre-arrest silence, the trial court added the following instruction to the final jury charge: "Any person questioned in connection with a crime is under no duty to give any statement whatsoever, and refusal to give any such statement shall never give rise to any inference hurtful, harmful or adverse to such person in any way." This instruction further mitigated any harm resulting from Detective Cooper's testimony or the prosecutor's remarks. See Taylor v. State, 306 Ga. 277, 286 (3) (b) (830 SE2d 90) (2019) ("We presume that the jury follows the trial court's instructions.").

[defendant's] pre-arrest failure to come forward, it is highly probable that any error in the admission of that evidence did not contribute to the verdict."); Barnes v. State, 269 Ga. 345, 352 (12) (496 SE2d 674) (1998) (the "weight of the evidence" rendered harmless the State's erroneous comments on defendant's pre-arrest silence). Because the allegedly improper evidence and comments were harmless, the trial court did not err when it denied Taylor's motion for a mistrial. See Johnson v. State, 294 Ga. 610, 612 (2) (757 SE2d 49) (2014).

Judgment affirmed. All the Justices concur.

DECIDED FEBRUARY 10, 2020.
Murder. Fulton Superior Court. Before Judge Cox.
*Danny Wells*, for appellant.

14

*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Aslean Z. Eaglin, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General*, for appellee.